Appeal No. 2015-1970

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**VERINATA HEALTH, INC., THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,**
*Plaintiffs,*

AND

**ILLUMINA, INC.,**
*Plaintiff-Appellant*

v.

**ARIOSA DIAGNOSTICS, INC. AND LABORATORY CORPORATION OF AMERICA HOLDINGS,**
*Defendants-Appellees.*

*Appeal from the United States District Court for the Northern District of California, Case Nos. 3:12-cv-05501 and 14-cv-01921 Judge Susan Illston*

## NONCONFIDENTIAL OPENING BRIEF FOR
## PLAINTIFF-APPELLANT ILLUMINA, INC.

Edward R. Reines
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

*Attorneys for Plaintiff-Appellant*

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................. iii

CERTIFICATE OF INTEREST ........................................................... vi

STATEMENT OF RELATED CASES .....................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF ISSUE PRESENTED ..................................................2

STATEMENT OF THE CASE...............................................................2

    I.     THE PARTIES .....................................................................2

    II.    PROCEDURAL BACKGROUND .........................................3

    III.   THE SUPPLY AGREEMENT AND ARIOSA'S CONTRACT COUNTERCLAIMS ...........................................5

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT ...................................................................................14

    I.     STANDARD OF REVIEW ..................................................14

    II.    ARIOSA'S CONTRACT CLAIMS ARE SUBJECT TO ARBITRATION..............................................................14

        A.    The District Court Erred In Concluding That Ariosa's Contract Counterclaims Relate To Patent Infringement...........15

        B.    Ariosa's Contract Counterclaims Do Not Relate To Patent Scope...........................................................22

        C.    The District Court Failed To Resolve Doubts In Favor Of Arbitration...................................................24

    III.   THE DISTRICT COURT SHOULD HAVE SEVERED ARIOSA'S CONTRACT COUNTERCLAIMS AND SENT THOSE TO ARBITRATION..............................................25

CONCLUSION ................................................................................30

CERTIFICATE OF COMPLIANCE......................................................31

i

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 5 and 6 contains information designated as confidential by Illumina. The material contains highly-sensitive and confidential terms of a confidential supply agreement.

# TABLE OF AUTHORITIES

Page(s)

C**ASES**

*Ariosa Diagnostics, Inc. v. Verinata Health, Inc.*,
  No. 2015-1215 (Fed. Cir. Dec. 29, 2014) ............................................................2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ............................................................. 10, 25

*Buschman v. Anesthesia Bus. Consultants LLC*,
  42 F. Supp. 3d 1244 (N.D. Cal. 2014) .............................................27

*Choice Hotels Int'l., Inc. v. BSR Tropicana Resort Inc.*,
  252 F.3d 707 (4th Cir. 2001).............................................................17

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
  83 Cal. App. 4th 677 (2000) ............................................................24

*Collins & Aikman Products Co. v. Building Systems, Inc.*,
  58 F.3d 16 (2d Cir. 1995)...................................................................26

*Datatreasury Corp. v. Wells Fargo & Co.*,
  522 F.3d 1368 (Fed. Cir. 2008)........................................................14

*Ghirardelli v. Peninsula Properties Co.*,
  16 Cal. 2d 494, 107 P.2d 41 (1940) ................................................16

*Illumina, Inc. v. Ariosa Diagnostics, Inc. et al.*,
  No. C 15-02216 (N.D. Cal.) ...............................................................1

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
  No. 2014-1815 (Fed. Cir. filed Sept. 15, 2014) .................................1, 4

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
  No. 2014-1815 (Fed. Cir. June 23, 2015), ECF. No. 57 ....................1, 5

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
  No. 2014-1815 (Fed. Cir. June 5, 2015), ECF. No. 52 .........................4

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
  No. C 14-01921 (N.D. Cal.) (Illston, J.) ............................................1

*KPMG LLP v. Cocchi*,
  565 U.S __ (2011) ..............................................................................26

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ........................................................ 16, 22

*McCoy v. Mitsuboshi Cutlery, Inc.*,
  67 F.3d 917 (Fed. Cir. 1995) ............................................................. 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .......................................................................... 25

*Oceanside 84, Ltd. v. Fid. Fed. Bank*,
  66 Cal.Rptr.2d 487 (Cal. Ct. App. 1997) .......................................... 24

*Oculus Innovative Sciences, Inc. v. Nofil Corp.*,
  No. C 06-01686 SI, 2007 WL 2600746 (N.D. Cal. Sept. 10, 2007) ... 27

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) ............................................................................. 20

*Promega Corp. v. Life Techs. Corp.*,
  674 F.3d 1352 (Fed. Cir. 2012) ........................................................ 14

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*,
  749 F.2d 124 (2d Cir. 1984) ........................................................ 18, 25

*Shaw v. Delta Air Lines*,
  463 U.S. 85 (1983) ............................................................................ 20

*The Board of Trustees of the Leland Stanford Junior University v. Ariosa Diagnostics, Inc.*,
  No. 2015-1413 (Fed. Cir. filed March 4, 2015) ................................... 1

*Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc. et al.*,
  No. C 12-05501 (N.D. Cal.) (Illston, J.) ............................................. 1

## STATUTES

28 U.S.C. § 1331 ....................................................................................... 2

28 U.S.C. § 1338(a) .................................................................................. 2

28 U.S.C. § 1367(a) .................................................................................. 2

9 U.S.C. § 16 ............................................................................................ 2

9 U.S.C. § 4 .............................................................................................. 5

ERISA § 514(a) ................................................................................. 20, 21

iv

## <u>TABLE OF ABBREVIATIONS AND CONVENTIONS</u>

Ariosa            Ariosa Diagnostics, Inc.

Illumina          Illumina, Inc.

'794 patent       U.S. Patent No. 7,955,794

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Plaintiff-Appellant Illumina, Inc. certifies as follows:

1. The full name of every party or amicus represented by us is:

   Illumina, Inc.

2. The name of the real party in interest represented by us is:

   Illumina, Inc.

3. All parent corporations and any public companies that own 10 percent or more of the stock of the parties represented by us are:

   None.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear in this Court are:

   Edward R. Reines
   Derek C. Walter
   Audrey Maness
   Michele A. Gauger
   Aaron Y. Huang
   Anant N. Pradhan
   **Weil, Gotshal & Manges LLP**

vi

## STATEMENT OF RELATED CASES

The following cases pending in the United States District Court for the Northern District of California have been related and consolidated by the District Court: (1) *Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc. et al.*, No. C 12-05501 (N.D. Cal.) (Illston, J.), (2) *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. C 14-01921 (N.D. Cal.) (Illston, J.), and (3) *Illumina, Inc. v. Ariosa Diagnostics, Inc. et al.*, No. C 15-02216 (N.D. Cal.) (Illston, J.).

There has been one previous appeal from these related civil actions. *See Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. filed Sept. 15, 2014). That appeal related to the exact issues presented in the instant appeal. After this previous appeal was brief and argued, this Court vacated and remanded so that jurisdictional issues surrounding the appeal could be resolved. *See* Order, *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. June 23, 2015), ECF. No. 57.

Also currently pending before this Court are appeals of three decisions in *inter partes* review proceedings before the Patent Trial and Appeal Board regarding patents at issue in the consolidated district court litigation. *See The Board of Trustees of the Leland Stanford Junior University v. Ariosa Diagnostics, Inc.*, No. 2015-1413 (Fed. Cir. filed March 4, 2015); *Ariosa Diagnostics, Inc. v.*

*Verinata Health, Inc.*, No. 2015-1215 (Fed. Cir. Dec. 29, 2014).  The consolidated district court litigation is currently stayed pending resolution of the three appeals currently pending before this Court.

## JURISDICTIONAL STATEMENT

The District Court exercised jurisdiction over Illumina's claims and Ariosa's declaratory judgment counterclaims under 28 U.S.C. §§ 1331, 1338(a).  On the other hand, the District Court exercised jurisdiction over Ariosa's breach of contract and breach of covenant of good faith and fair dealing claims ("Contract Counterclaims") based on the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

The District Court issued its order declining to compel arbitration on August 31, 2015, JA1, and Illumina filed its notice of appeal the same day. JA385.  This Court has jurisdiction under 9 U.S.C. § 16 to review the District Court's decision.

## STATEMENT OF ISSUE PRESENTED

Whether Ariosa's Contract Counterclaims must be arbitrated.

## STATEMENT OF THE CASE

### I.    THE PARTIES

Illumina was founded in 1998.  It is a leading biotechnology company that develops, manufactures, and markets integrated systems and tools for large-scale analysis of DNA, including DNA sequencers.  JA115.  Through its sequencing and

array-based solutions, Illumina has revolutionized DNA analysis. *Id.* Most recently, Illumina achieved a significant milestone in medical progress through the launch of sequencing technology capable of pushing the cost of sequencing the human genome down to $1000. *Id.* Since its founding, Illumina has filed for and obtained numerous patents, including U.S. Patent No. 7,955,794 ("the '794 patent"), which pertains to custom DNA assay optimization techniques. JA60. The '794 patent lists seven inventors, including Dr. John Stuelpnagel and Dr. Arnold Oliphant. *Id.* Both Dr. Stuelpnagel and Dr. Oliphant held significant positions at Illumina. JA156. In fact, Dr. Stuelpnagel was a co-founder of Illumina and served as Illumina's acting President and CEO. *Id.* And, Dr. Oliphant served as Illumina's executive Vice President of Scientific Operations. *Id.*

Shortly after developing the technology of the '794 patent, Drs. Stuelpnagel and Oliphant left Illumina. In late 2009, Dr. Stuelpnagel launched Ariosa. JA157. Dr. Oliphant joined Ariosa shortly therefter. *Id.* Ariosa's focus was the development of a non-invasive prenatal diagnostic test for the detection of fetal aneuploidies. *Id.* Ariosa would ultimately commercialize such a test, named the Harmony Prenatal Test, which it launched in May 2012. *Id.*

## II.    PROCEDURAL BACKGROUND

This appeal is before the Court under unusual procedural circumstances. The sole issue on appeal is whether Ariosa's Contract Counterclaims fall under the

arbitration provision of the parties' Supply Agreement. This issue was the subject of a previous appeal that was fully briefed and argued before this Court. *See Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. filed Sept. 15, 2014).

At oral argument in the previous appeal, however, this Court raised *sua sponte* a jurisdictional question. Specifically, the Court noted that Illumina's district court motion was styled not as a motion to compel arbitration, but as a motion to dismiss. Under some regional circuit authority, this Court suggested, the form of the caption may raise a jurisdictional issue. *See* Oral Argument Recording at 3:52, *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. June 5, 2015), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1815.mp3.

After oral argument, this Court requested supplemental briefing on the jurisdictional issue. *See* Order, *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. June 5, 2015), ECF. No. 52. On June 23, 2015, after considering the parties' supplemental briefing, this Court remanded to the district court so that Illumina could resubmit a motion that was specifically styled as a motion to compel arbitration:

> In order to resolve uncertainty affecting our jurisdiction, we remand
> the case to the district court to afford Appellant Illumina, Inc. the
> opportunity to move to compel arbitration. The district court may

4

take such action as is appropriate.

Order, *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 2014-1815 (Fed. Cir. June 23, 2015), ECF. No. 57.

On July 20, 2015, Illumina filed a motion to compel arbitration that was explicitly captioned as a "Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4." JA249. On August 31, 2015 the district court denied the motion.  JA1.  Illumina filed its notice of appeal on the same day.  JA401.

## III.    THE SUPPLY AGREEMENT AND ARIOSA'S CONTRACT COUNTERCLAIMS

In January 2012, shortly before launching its product, Ariosa entered into a Supply Agreement with Illumina.  The Supply Agreement provided for Illumina to supply specific consumables, hardware, and software to Ariosa for DNA sequencing.  JA204-5.  In addition, the Supply Agreement provided Ariosa with limited licenses to some of Illumina's "Core IP Rights in Goods," but specifically excluded "Secondary IP Rights in Goods."    JA204.   The Supply Agreement defined "Secondary IP Rights in Goods" as:

> [T]he secondary Illumina Intellectual Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or application(s), and are not common to the Goods in all applications and fields.

5

*Id.* To avoid any doubt, Illumina further defined "Core IP Rights in Goods" as "Illumina Intellectual Property Rights that pertain to the Goods (and use thereof in accordance with their Documentation) other than Secondary Illumina IP Rights in Goods, which are expressly excluded from Core IP Rights in Goods…." JA202.

The Supply Agreement further contained a mandatory arbitration provision, which provides that "any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration." JA219. The broad arbitration provision includes a narrow exception, which states that the arbitration provision "shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." *Id.*

Although Ariosa contends that the Supply Agreement gives it a license defense, this contention is meritless. To the extent Ariosa was granted any intellectual property rights whatsoever in the supply agreement, they are expressly limited to rights that "pertain to the Goods" supplied pursuant to the Supply Agreement. The only goods that Illumina ever supplied to Ariosa included basic sequencing instruments and reagents. Ariosa does not dispute that the goods that

- CONFIDENTIAL MATERIAL OMITTED -

Illumina supplied to Ariosa under the Supply Agreement do not include the type of proprietary custom DNA assay optimization kits and techniques that are the subject matter of the '794 patent.   Nor do they include specific prenatal diagnostic techniques that are the subject of two patents that were asserted against Ariosa in late 2012 by Verinata Health, Inc. ("Verinata"), which is now a wholly owned subsidiary of Illumina.[1]   As such, these three patents are neither Core IP Rights in Goods nor Secondary IP Rights in Goods.   Notably, in district court discovery, Ariosa avoided straightforwardly stating whether the '794 patent constitutes Core IP or Secondary IP, as defined in the Supply Agreement.   *See* JA324-26 [7th Interrogatory Responses].   Thus, it is unquestionable that Ariosa needed to obtain a license to not just the '794 patent but the additional patents asserted by Verinata to practice the methods claimed in those patents.

Illumina filed a complaint against Ariosa for infringement of the '794 patent on April 25, 2014 against Ariosa's DNA sequencing-based product.   *See* JA116. Initially, Ariosa responded with straightforward declaratory judgment counterclaims regarding infringement and invalidity.   Three weeks later Ariosa filed an amended answer adding counterclaims for breach of contract and breach of

---

[1] The two patents originally asserted against Ariosa by Verinata are U.S. Patent No. 8,296,076 and U.S. Patent No. 8,318,430.   Ariosa requested *inter partes* review of these patents, and the Patent Office decisions are currently on appeal to the Federal Circuit.

the covenant of good faith and fair dealing.  *See* JA149-51.  Ariosa's Contract Counterclaims alleged that Illumina breached the Supply Agreement by "bringing a lawsuit against Ariosa for infringement of the '794 patent" and "by asserting pretextual claims of 'breach' of the Agreement."  *Id.*  Nothing in the Supply Agreement, however, precluded Illumina from notifying Ariosa when it was in breach of the Supply Agreement.  Nor did anything in the Supply Agreement preclude Illumina from suing Ariosa for infringement relating to technology that was not purchased from Illumina.

The gravamen of Ariosa's Contract Counterclaims is that Illumina's infringement complaint chilled an initial public offering it was considering. According to Ariosa, "as a result of Illumina's lawsuit, Ariosa's IPO could not proceed as planned."  JA245 ¶ 69 [2d Am. Answer].  Ariosa further alleged in its second amended complaint that because of Illumina's lawsuit, it "suffered loss of business value," and was "forced to expend resources to attempt to replace the lost proceeds and restore market, investor, and partner confidence in Ariosa."  *Id.*  It has since emerged that at the time Ariosa was making these claims, it had long since been in acquisition discussions with biotechnology giant Roche.  *See* JA337-38 [8th Interrogatory Responses].  Just a few months later, Roche acquired Arisoa for $625 million—a figure that is nearly double the valuation that Ariosa was hoping to sell its shares at in its IPO.  JA343-45 [Acquisition Press Release];

8

JA341 [IPO Press Release].  Given this $625 million purchase price, it is now clear that Ariosa never lost any "business value" or "market, investor, and partner confidence."  Likewise, it is now clear that Ariosa's reasons for foregoing an IPO had nothing to do with Illumina's lawsuit, but were instead related to the fact that it had decided to pursue a much more lucrative acquisition by Roche.[2]

As noted above, on July 20, 2015 Illumina filed a motion to compel arbitration of Ariosa's Contract Counterclaims.  *See* JA249.  Ariosa's response was based on the argument that its Contract Counterclaims relate to the issue of patent infringement and/or patent scope and thus fell within the Supply Agreement's narrow exception to the arbitration provision.  On August 31, 2015, the district court ruled in favor of Ariosa, ruling that Ariosa's Contract Counterclaims "clearly relate to issues of patent infringement":

> Because Ariosa's breach counterclaims unambiguously relate to issues of patent infringement, the counterclaims are, by the specific provisions of the arbitration clause itself, outside of the scope of the arbitration agreement…hence, the presumption of arbitrability has been rebutted. Therefore, the Court declines to compel arbitration of

---

[2] Ariosa also alleges it was harmed because Illumina's lawsuit forced it to transition its product away from the Illumina sequencing platform to a product that uses a microarray platform, which also infringes the '794 patent.  JA245 ¶ 70 [2d Am. Answer].  This claim is also now known to be false.  Numerous Ariosa witnesses have testified that Ariosa's efforts in this regard began as early as the first quarter of 2013, almost a year before Illumina asserted the '794 patent against Ariosa.  *See, e.g.*, JA350:4-51:7 [Sparks Dep.Tr.]; JA358:25-59:16 [Oliphant Dep.Tr.]; JA367:16-24 [Zahn Dep.Tr.]; JA374:7-16 [Mullarkey Dep.Tr.].

Ariosa's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

JA6.

## SUMMARY OF ARGUMENT

Ariosa's Contract Counterclaims are governed by the parties' broad arbitration provision and the District Court should have required Ariosa to arbitrate those claims. Pursuant to binding Supreme Court precedent, the District Court was to have ordered arbitration unless Ariosa provided "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The task before the District Court, then, was not to determine whose construction of the Supply Agreement it preferred, but only whether the agreement was susceptible to Illumina's interpretation.

The District Court did not approach the parties' dispute in this legally mandated way. The District Court did ***not*** find that Ariosa's Contract Counterclaims would require the arbitrator to resolve any question of patent scope, infringement, validity, or enforceability. Rather, despite the liberal federal policy in favor of arbitration and the breadth of the arbitration provision, the District Court stretched the parties' exception to their broad commitment to arbitrate their disputes about their Supply Agreement.

10

Specifically, the District Court concluded that, because Ariosa was arguing that it had a license, and because a license is a defense to patent infringement, the Contract Counterclaims in that loose sense are claims "relating to" patent infringement. JA6 [Order] ("Therefore, whether an accused infringer has been granted an express or implied license is an issue that is directly relates [sic] to whether a patent has been infringed."). Rather than manufacturing an attenuated connection between Ariosa's Contract Counterclaims and the arbitration exception in this manner, the District Court should have simply asked whether Illumina's construction of the Supply Agreement was reasonable.

For at least two reasons, Illumina's interpretation was indeed reasonable, and the District Court erred in failing to order arbitration. First, the text of the Supply Agreement shows that the intent of the exception to the expansive arbitration provision is to ensure that the arbitrator need not resolve questions of patent infringement (or patent scope, invalidity, or enforceability). But the District Court did not find that such questions are implicated by the Contract Counterclaims at all. The fact that a license is ultimately a defense to patent infringement is too far removed to establish that the Contract Counterclaims would require the arbitrator to resolve questions related to infringement. And, if the parties had intended disputes as to what licenses were provided by the supply agreement to be arbitrable, they easily could have listed licenses as a topic in their

11

list of legal questions they did not want an arbitrator to decide. Although licensing is mentioned throughout the Supply Agreement, it was omitted from the arbitration exception and that decision should be honored.

Second, in deciding whether the highly contextual term "relating to" should be construed more broadly or more narrowly, the District Court should have been guided by the general principle that exceptions should be construed narrowly lest they swallow the rule. Arbitration exceptions, in particular, must be construed narrowly given binding Supreme Court authority firmly establishing that arbitration provisions should be enforced unless it may be said with "positive assurances" that the provision does not apply to the dispute at issue. The District Court's explicit decision to grant the term "relating to" in the arbitration exception a "broad" interpretation, notwithstanding the particulars of this situation, did not sufficiently appreciate the federal policy in favor of arbitration and, accordingly, that any ambiguities in applying an arbitration provision are to be construed in favor of arbitration.

While the District Court concluded that Ariosa was entitled to avoid arbitration for the license issue itself, at a minimum it should not have permitted Ariosa to avoid arbitration for the remainder of Ariosa's Contract Counterclaims, which seek millions in damages because Illumina allegedly filed suit "on the eve of Ariosa's planned roadshow in support of its announced Initial Public Offering."

12

JA280 [Resp. Br. of Defendant-Appellee]; *see also* JA243 ¶ 54 [2d Am. Answer]. The facts and issues related to Ariosa's IPO have nothing to do with either Ariosa's license defense or the issues listed in the arbitration exception. According to Ariosa's counterclaims, its claim to relief was prompted solely from the fact that Illumina filed suit; according to Ariosa, its right to relief is not predicated on whether the '794 patent is valid or invalid, whether it is infringed or not, whether it is enforceable or not, or whether it has a particular scope. Because Ariosa's Contract Counterclaims are legally and factually distinct from Ariosa's license defense and the issues excluded from arbitration in the Supply Agreement, the Court should have at least severed those claims and sent them to arbitration.

Indeed, if Ariosa were found not to infringe because its accused product does not meet one of the elements of the asserted claims of the '794 patent, Ariosa's license defense would be moot. Yet, Ariosa would presumably continue to press its Contract Counterclaims, alleging various business harms that have nothing to do with infringement or licensing but that are related to its IPO, loss of investor confidence, and alleged unequal treatment by Illumina. While Ariosa would no doubt contend that such Contract Counterclaims originally stem from an assertion of infringement, based on its litigation positions, Ariosa's contract counterclaims would presumably proceed even in the absence of an actual dispute related to an issue of infringement and in a world where Ariosa's license defense

13

would be, at best, hypothetical. This demonstrates just how attenuated Ariosa's Contract Counterclaims are from the specific intellectual property issues that are excluded from arbitration in the Supply Agreement.

At bottom, Ariosa's Contract Counterclaims are exactly that—contract disputes. They should be arbitrated.

## ARGUMENT

### I.     STANDARD OF REVIEW

A district court's determination whether parties "have contractually bound themselves to arbitrate" is reviewed *de novo*. *Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1355 (Fed. Cir. 2012) (quoting *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1371 (Fed. Cir. 2008)). The Court must follow regional circuit law on questions of arbitrability that are not intimately involved in the substance of enforcement of a patent right. *Id.*

### II.     ARIOSA'S CONTRACT CLAIMS ARE SUBJECT TO ARBITRATION

It is undisputed that Ariosa's Contract Counterclaims fall squarely within the mandatory arbitration provision because they relate to and arise out of breach of contract and the appropriate interpretation of the agreement—including what licenses were conveyed. To avoid its general commitment to arbitrate "breach" claims arising out of the Supply Agreement, Ariosa relies exclusively on the arbitration exception, which excludes from arbitration only "issues" related to

infringement, scope, validity, and enforceability of intellectual property. According to Ariosa, its Contract Counterclaims relate to patent infringement and/or patent scope and are thus excluded from arbitration. As documented below, however, Ariosa's Contract Counterclaims do not fall within the arbitration exception and the District Court's decision is erroneous.

## A.    The District Court Erred In Concluding That Ariosa's Contract Counterclaims Relate To Patent Infringement

In its order, the District Court did not find that Ariosa's Contract Counterclaims involved a dispute relating to the scope, validity, or enforceability of a patent. They do not. The District Court excluded Ariosa's Contract Counterclaims from arbitration based solely on its conclusion that they "relate to" patent infringement. JA5-6. The District Court stated that, because Ariosa is claiming the Supply Agreement provided it a license to the patent-in-suit, and because a patent license is a defense to an infringement claim, the license dispute in that loose sense "relates to" the infringement claim. JA6 ("Because Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the '794 patent, the counterclaims clearly relate to issues of patent infringement."). The District Court's overbroad reading of the term "relating to" was legally erroneous, as was its resulting conclusion that Ariosa's Contract Counterclaims should be excluded from arbitration.

The error in the District Court's conclusion is apparent from its acknowledgment that Ariosa's Contract Counterclaims involve a dispute about the terms of the agreement, not an examination of Ariosa's accused product. JA6 ("However, that the dispute can be resolved through an examination of an agreement rather than an examination of the accused product does not change the fact the dispute is related to the determination of whether the patent has been infringed."). It is black letter law that evaluating infringement requires an analysis of patent claims against a specific product. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (explaining that the "second step" of the infringement analysis is "comparing the properly construed claims to the device accused of infringing"). Because no claim construction or infringement analysis needs to be performed to resolve Ariosa's contract claims, resolution of Ariosa's Contract Counterclaims does not involve evaluating infringement and should not have been deemed to fall within the scope of the arbitration exception.

The language of the Supply Agreement confirms that Ariosa's Contract Counterclaims are not subject to the arbitration exception. "In the interpretation of a contract, it is a fundamental rule that all of the writing must be read together and every part interpreted with reference to the whole, so that each provision therein will be effective for its general purpose." *Ghirardelli v. Peninsula Properties Co.*, 16 Cal. 2d 494, 496, 107 P.2d 41 (1940). Here, the arbitration provision provides

16

context for understanding the scope of the provision and the exception:

> Subject to the terms and conditions of this Section 3l(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration….This Section 3l(c) shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.

JA219 [Sale and Supply Agreement].  The District Court failed to acknowledge numerous aspects of this provision demonstrating that the term "relating to" in the exception to arbitration should not be interpreted so broadly.

First, the District Court failed to recognize that the exception lies within a strong arbitration provision that manifests the parties' commitment to arbitrate their breach of contract disputes.  An exception that invades that agreement should be construed narrowly in the context of this contract given the parties' express broad intent to arbitrate such claims.  This follows from the general interpretive rule that exceptions should be read narrowly lest they overwhelm the rule.  *See Choice Hotels Int'l., Inc. v. BSR Tropicana Resort Inc.*, 252 F.3d 707, 711 (4th Cir. 2001) ("Second, when faced with a general rule and enumerated exceptions, we interpret the exceptions narrowly, lest they overwhelm the rule.").  A narrow construction is particularly warranted here because the parties negotiated the arbitration provision of the Supply Agreement against the backdrop of a strong federal policy in favor of arbitration, a consideration that Courts have repeatedly

17

held militates in favor of a narrow construction of an arbitration exception. *See, e.g.*, *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 800 (10th Cir. 1995) ("Once again, our obligation is to reconcile and to give meaning to all provisions of the parties' contracts. Our obligation to construe arbitration clauses broadly compels us to construe this exception to the arbitration clause narrowly."); *Choice Hotels*, 252 F.3d 711 (adopting a narrow reading of an arbitration exemption in view of the policy favoring arbitration); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 126 (2d Cir. 1984) ("Since this is a broad arbitration clause, providing for only a narrow exception, a court should compel arbitration unless there is positive, unambiguous assurance that the dispute is within that narrow exception.").[3]

Second, the District Court ignored that the exception to arbitration includes the limiting language that the disputes must relate to "***issues*** of scope, infringement, invalidity and/or enforceability." Each of these is a classic ***issue*** of patent law. If the parties had wanted to preclude arbitration of disputes related to

---

[3] The narrowness of the arbitration exception is further revealed by comparing it to the arbitration provision itself. While the arbitration exception covers only "disputes" that "relate to" four substantive intellectual property "issues," the arbitration provision more broadly refers to "***any***" type of "dispute, ***claim or controversy***" "***arising out of*** or relating" to the subject matter of the Supply Agreement generally. That is, the arbitration provision uses additional verbiage uniformly geared towards assuring breadth. The parties omitted this additional language from the arbitration exception, thus demonstrating the narrowness of the exception.

patent infringement ***causes of action*** broadly, they could have said so. This distinction between an excluded "issue" and an excluded claim reflects that the parties wanted to avoid the listed issues from being decided by an arbitrator, not that they intended for anything generally connected to patent infringement cases to be litigated in district court.

Finally, the District Court failed to recognize that its overbroad interpretation of "relating to" risks blindly and necessarily sweeping out of arbitration any dispute that could colloquially be said to relate broadly to patent infringement, thus undoing major portions of the arbitration provision itself. For instance, although the Supply Agreement includes three pages of material regarding who should indemnify Ariosa in the event of an infringement lawsuit, *see* JA215-17, no reasonable interpretation of the Supply Agreement would exclude such a dispute from arbitration, as it plainly arises out of and relates to interpretation of the Supply Agreement. However, Ariosa's broad reading of "relating to" would appear to bring disputes over this indemnification into the exception from arbitration. As another example, under the "broad" interpretation of "relating to" urged by Arisoa, the failure to pay for or failure to supply equipment as required by the Supply Agreement because of a patent infringement judgment and injunction would not be arbitrable. This would be true regardless of whether the arbitrator would have to decide issues related to patent "scope,

infringement, validity and/or enforceability."

Likewise, in the event it became clear that Ariosa infringed a third party's patent, a dispute over whether Illumina should nonetheless continue to supply Ariosa could be said to "relate to" infringement. As yet another example, if Ariosa were subject to a patent infringement injunction, and Ariosa then refused to pay for goods it had accepted on the grounds that it was forbidden from using them, the dispute could be said to "relate to" infringement issues. This is proof positive that the District Court's broad, mechanical reading of "relate to" is unwarranted, and that the arbitration provision only excludes from arbitration disputes that are actually about infringement, validity, scope, and/or unenforceability.

To support its broad interpretation of the term "relating to," the District Court simply cites in a footnote *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) and *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983). JA6 n.3 [Order]. These cases, however, have nothing to do with California contract law or the interpretation of "relating to" in arbitration provisions. Instead, these cases relate to the proper interpretation of "relate to" in the highly-specific context of ERISA. Thus, these cases relied upon considerations such as the structure of the ERISA statute and its legislative history to arrive at the proper contextual interpretation of the statute. *See, e.g.*, *Shaw*, 463 U.S. at 100 ("Given the plain language of § 514(a), the structure of the Act, and its legislative history, we hold that the Human

20

Rights Law and the Disability Benefits Law 'relate to any employee benefit plan' within the meaning of ERISA's § 514(a).").  These cases do not, as the District Court suggested, stand for the proposition that the term "relating to" has a static and broad meaning regardless of context.

By relying on unenlightening case law concerning the meaning of the context-dependent phrase "relating to," the District Court did not, as it should have, grapple with the alternative—and superior—context-specific interpretation of the term "relating to" that is applicable here.  As Illumina explained, the most natural significance of the inclusion of the phrase "relating to" in the arbitration exception is that it acts to ensure that disputes concerning patent infringement "issues" are not subject to arbitration.  This includes issues such as reasonable royalty rates, lost profits, willfulness, enhancement of damages, injunctive relief, standing, and discovery.  Indeed, without the use of "relating to" in this manner, the arbitration exception could conceivably be construed to require that infringement be tried in district court, but that the corresponding damages, injunctive relief, and willfulness issues be arbitrated.

Now, Ariosa seeks to misconstrue the use of "relating to" in the Supply Agreement to suggest that the parties intended for Ariosa's stand-alone contract claims that relate to its withdrawn IPO and that seek millions of dollars for breach

of the Supply Agreement be excluded from arbitration. This Court should reject Ariosa's efforts to misconstrue the Supply Agreement in this manner.

### B.     Ariosa's Contract Counterclaims Do Not Relate To Patent Scope

During the District Court's remand proceedings, Ariosa added the argument that its Contract Counterclaims relate to the issue of patent scope and hence fall within the arbitration exception. Ariosa's Contract Counterclaims, however, are no more related to patent scope than they are patent infringement.

According to Ariosa, assessing whether it is licensed under the Supply Agreement requires a "technical analysis" of the '794 patent to determine whether it is Core IP or Secondary IP. JA390 [Opp'n to Mot. to Compel Arbitration]. Not so. As explained above, the scope of any IP rights granted in the Supply Agreement is defined in terms of the "Goods" supplied under the Supply Agreement. *See supra* Part III. Here, assessing Ariosa's license defense requires, at the very most, understanding the general subject matter of the '794 Patent in relation to the goods Ariosa purchases pursuant to the Supply Agreement. Resolving this issue is a traditional breach of contract issue. It will not involve the mechanics of *Markman*, will not involve an analysis of the intrinsic record of the patents (such as the file history), and will not delve into the details of the claim terms. Any contention that Ariosa's license defense requires analysis of the

22

"scope" of "Intellectual Property Rights" is thus unpersuasive.

Notably, in the District Court, Ariosa avoided straightforwardly stating whether the '794 patent constitutes Core IP or Secondary Illumina IP. *See* JA324-26 [7th Interrogatory Responses]. In responding to Illumina's interrogatory on this issue, Ariosa took the position that this issue simply does not matter. And Ariosa's interrogatory response provided no analysis whatsoever of the scope of the '794 patent. *See id.* While Ariosa was wrong to contend that it is licensed to the '794 patent, it was correct that an assessment of whether it is licensed will not require an analysis of the scope of the '794 patent.

While Ariosa suggested to the District Court that there may be disputes regarding the scope of the '794 patent, Ariosa never identified any actual dispute regarding the subject matter or scope of the '794 patent. The subject matter and scope of the '794 patent is well-settled and there are no genuine disputes over these issues. Ariosa's failure to identify any such dispute is an acknowledgment that this is so. If there is any dispute whatsoever, it has to do with interpretation of the Supply Agreement with regard to the goods supplied under the Supply Agreement, not the subject matter or scope of the '794 patent. This, however, is a classic contract interpretation issue that is what the parties agreed to arbitrate in the Supply Agreement.

## C.     The District Court Failed To Resolve Doubts In Favor Of Arbitration

Taking Ariosa's arguments in the most favorable light, what can be said is that the arbitration provision and exception are susceptible to two different interpretations of the term "relating to."  "If a contract is capable of two different reasonable interpretations, the contract is ambiguous."  *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 66 Cal.Rptr.2d 487, 492 (Cal. Ct. App. 1997).   Under governing California law, it was Ariosa's burden to establish that there is no ambiguity. *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 686-87 (2000), as modified (Sept. 7, 2000) ("It seems clear that the burden must fall upon the party opposing arbitration to demonstrate that an arbitration clause cannot be interpreted to require arbitration of the dispute.").

As demonstrated above, the parties did not intend for the arbitration provision to cover Ariosa's Contract Counterclaims, and this is the interpretation that should govern.   While the District Court nonetheless adopted Ariosa's proposed interpretation, the District Court did not explain how Illumina's interpretation could be unreasonable.   As the Tenth Circuit has explained, "to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved in favor of arbitrability."  *Armijo*, 72 F.3d at 798.  This is so because the Supreme Court has explained that "doubts should be resolved in favor of

24

[arbitration] coverage." *AT&T Techs.,* 475 U.S. at 650 (citations omitted); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985) ("Thus, insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability.").

The Supreme Court's mandate in instances of ambiguity is strict, requiring arbitration unless there are "positive assurance[s] that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650. Given the breadth of the arbitration provision and the right-sized interpretation of "related to" in this context, *see supra* Part II.A, Ariosa could not have met its burden of providing "positive, unambiguous assurance that the dispute is within that narrow exception." *Roso-Lino*, 749 F.2d at 126.

## III. THE DISTRICT COURT SHOULD HAVE SEVERED ARIOSA'S CONTRACT COUNTERCLAIMS AND SENT THOSE TO ARBITRATION

Ariosa's Contract Counterclaims allegedly stem from the notion that the Supply Agreement gives it a license to the '794 patent, and that Illumina was thus not permitted to sue Ariosa for infringement. The right to a license, however, is a classic contract issue. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("Whether express or implied, a license is a contract governed by ordinary principles of state contract law."). There was thus no reason for the

District Court to assume that the arbitration provision of the Supply Agreement would not encompass Ariosa's license defense. Indeed, if the parties had wanted broadly to exclude from their arbitration provision any dispute generally relating to patents—even including licensing—they could have said that with ease. Instead, they specifically listed the issues they did not want the arbitrator "to resolve," and the right to a license was ***not*** among them. The District Court should have given meaning to the parties' calculated and conspicuous description of the legal questions that the parties did not want the arbitrator to "resolve."

Even if a license defense is permitted under the District Court's logic, however, the District Court still should have ordered the claims and issues that make up Ariosa's Contract Counterclaims—but that have nothing to do with Ariosa's license issue—to arbitration. The law is clear that this is what the District Court should have done:

> If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues. We will apply these principles to claims two through seven of the Statement of Claims.

*Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see also KPMG LLP v. Cocchi*, 565 U.S __ (2011) ("The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and

some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.").

Here, Ariosa's Contract Counterclaims are distinct both legally and factually from Ariosa's license defense, and there is no reason why the District Court could not have applied this law to sever Ariosa's Contract Counterclaims from its license defense.

First, while a license is a matter of contract, an action for breach of contract includes legal elements that are not part of a license defense, including a damages requirement. *See Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) ("The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach."). Likewise, a claim for breach of the covenant of good faith and fair dealing requires proof of yet additional elements pertaining to both the plaintiff's and the defendant's conduct under the contract. *See, e.g.*, *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) ("A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the

27

defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."). Thus, Ariosa's Contract Counterclaims are legally distinct from Ariosa's license defense.

They are also factually distinct. Ariosa's Contract Counterclaims focus on sundry business harms related to its withdrawn IPO that have no bearing on a license defense. Ariosa alleges that it is entitled to millions in damages because Illumina's alleged breach of the Supply Agreement "came literally on the eve of Ariosa's planned roadshow in support of its announced Initial Public Offering." JA280 [Resp. Br. of Defendant-Appellee]; *see also* 243 ¶ 54 [2d Am. Answer] (Ariosa asserts that Illumina's alleged breach was an "attempt to derail Ariosa's initial public offering"); JA188-89 [Opp'n to Mot. to Dismiss Countercls.]. According to Ariosa, "as a result of Illumina's lawsuit, Ariosa's IPO could not proceed as planned." JA245 ¶ 69 [2d Am. Answer]. Despite having been acquired by Roche for $625 million just a few months after Illumina filed its April 2014 lawsuit, Ariosa alleges that it suffered "loss of business value" and had to restore "market, investor, and partner confidence in Ariosa." *Id.* Similarly, even a quick review of Ariosa's claim for the breach of the covenant of good faith and fair dealing reveals that it is all about allegedly unfair business treatment by Illumina, not patent infringement or patent scope:

28

Illumina has breached the covenant of good faith and fair dealing by filing the '794 patent infringement claim against Ariosa in an attempt to unreasonably deprive Ariosa of the benefits of the Agreement, namely, Ariosa's ability to use the Goods in performing the Harmony™ Prenatal Test. Illumina has also breached the covenant of good faith and fair dealing by asserting pretextual claims of "breach" of the Agreement by Ariosa in an effort to obtain additional concessions that were foregone during the bargaining process. This conduct has the intent to treat, as well as the effect of treating, Ariosa in a manner that is discriminatory and different from other, similarly-situated customers in the non-invasive prenatal DNA testing field. It further imposes unwarranted burdens on Ariosa with the purpose of diminishing Ariosa's ability to compete effectively with "Verinata," now a business unit of Illumina, or other competitors. It also deprives Ariosa of the benefits of the Agreement by disrupting, and impeding Ariosa's relationships with customers, third-party contractors, and investors.

JA247 ¶ 78 [2d Am. Answer]. Simply put, the core of Ariosa's Contract Counterclaims revolves around facts that have nothing to do with its license defense.

Here, the Supply Agreement specifically excludes from arbitration only disputes related to "issues" of infringement, validity, scope, or unenforceability. It does not, as Ariosa apparently contends, exclude every "issue" that Ariosa brings into this case, including its theory about how it was harmed by allegedly being unable to pursue an IPO. As such, just because the District Court seemingly concluded that Ariosa could present to the jury a licensing issue based on the Supply Agreement, the additional disputed issues associated with Ariosa's Contract Counterclaims—including money damages claims—should have been

sent to arbitration.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be reversed and Ariosa should be compelled to arbitrate its Contract Counterclaims.

Dated: September 11, 2015             Respectfully submitted,


By    */s/ Edward R. Reines*
      Edward R. Reines
      WEIL GOTSHAL & MANGES LLP
      201 Redwood Shores Parkway
      Redwood Shores, CA 94065
      Telephone: (650) 802-3000

      *Attorneys for Plaintiff-Appellant*
      Illumina, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).  This brief contains 6,578 words as calculated by the "Word Count" feature of Microsoft Word 2010, the word processing program used to create it.

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.


Dated: September 11, 2015              /s/ *Edward R. Reines*
                                       Edward R. Reines
                                       WEIL GOTSHAL & MANGES LLP
                                       201 Redwood Shores Parkway
                                       Redwood Shores, CA 94065
                                       Telephone: (650) 802-3000

                                       *Attorney for Plaintiff-Appellant*
                                       Illumina, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2015, I filed or caused to be filed copies of the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served or caused to be served a copy on all counsel of record by the CM/ECF system.

Dated: September 11, 2015

/s/ *Edward R. Reines*

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Attorney for Plaintiff-Appellant*
Illumina, Inc.

# ADDENDUM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERINATA HEALTH, INC., BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY and ILLUMINA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARIOSA DIAGNOSTICS, INC., <br><br> Defendant. | Case No. 12-cv-05501-SI <br><br> **ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. Nos. 250, 251, 261 |

Now before the Court is Illumina's motion to compel arbitration, currently set for oral argument on September 4, 2015. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and **VACATES** the hearing. For the reasons stated below, the Court **DENIES** Illumina's motion.

**BACKGROUND**

This is a patent infringement action. Plaintiffs Illumina, Inc., Verinata Health, Inc. and the Board of Trustees of the Leland Stanford Junior University (collectively "Illumina") accuse Ariosa's Harmony™ Prenatal Test of infringing U.S. Patent No. 8,296,076 ("the '076 patent"), U.S. Patent No. 8,318,430 ("the '430 patent"), and U.S. Patent No. 7,955,794 (the '794 Patent). Defendant Ariosa has filed a counterclaim for breach of contract.

In May 2013, Ariosa filed petitions for *inter partes* review, requesting that the Patent Trial and Appeal Board ("PTAB") review claims 1-30 of the '430 patent and claims 1-13 of the '076 patent. On October 25, 2013, the PTAB instituted *inter partes* review of claims 1-30 of the '430 Patent on obviousness grounds. On November 20, 2013, PTAB instituted *inter partes* review of

1    claims 1-13 of the '076 Patent on anticipation and obviousness grounds. On October 23, 2014, the

2    PTAB issued two orders holding that Ariosa had failed to show that claims 1-30 of the '430 Patent

3    are unpatentable. *See Ariosa Diagnostics, Petitioner*, IPR2013-00276, 2014 WL 5454541(Oct. 23,

4    2014); *Ariosa Diagnostics, Petitioner*, IPR2013-00277, 2014 WL 5454542 (Oct. 23, 2014). On

5    November 19, 2014, the PTAB issued an order finding that the challenged claims of the '076

6    Patent are unpatentable. *See Ariosa Diagnostics, Petitioner*, IPR2013-00308, 2014 WL 6617697

7    (Nov. 19, 2014). These PTAB rulings have all been appealed to the Federal Circuit. On January 8,

8    2015, PTAB instituted *inter partes* review of claims 1-22 of the '794 Patent. *See Ariosa*

9    *Diagnostics, Inc., Petitioner*, IPR2014-01093, 2015 WL 153677 (Jan. 8, 2015).

10        In June, 2014, Illumina filed a motion to dismiss Ariosa's counterclaim, based on an

11   arbitration clause in the underlying contract between the parties.  On August 7, 2014, this Court

12   denied the motion to dismiss, holding that Ariosa was entitled to pursue its counterclaims for

13   breach of contract and the convenant of good faith and fair dealing in a judicial forum,

14   notwithstanding the arbitration clause. Case No. 14-cv-1921, Docket No. 40. These counterclaims

15   are of central importance to Ariosa's defense because they relate to its assertion that Illumina

16   granted Ariosa an express or implied license to practice the '794 Patent. *Id.* at 5.  On September 8,

17   2014, Illumina appealed this Court's denial of its motion to dismiss to the Federal Circuit. C. 14-

18   cv-1921, Docket No. 56.

19        On February 2, 2015, this Court granted Ariosa's third motion to stay pending the final

20   exhaustion of the *inter partes* review proceedings to which the '794 Patent is subject, the Federal

21   Circuit appeals from *inter partes* review to which the '430 and '076 Patents are subject, and the

22   appeal from the Court's order finding that it has subject matter jurisdiction to hear Ariosa's breach

23   counterclaims. Docket No. 229.[1]

24        On June 23, 2015, the Federal Circuit issued a two-sentence opinion, finding that it did not

25   have jurisdiction to hear Illumina's appeal of this Court's order denying its motion to dismiss the

26   counterclaim. Illumina had appealed this Court's order under 9 U.S.C. § 16(a)(1), which permits

27

28

---

[1] Unless otherwise noted, all Docket Nos. refer to Case No. 12-cv-5501.

United States District Court
Northern District of California

direct interlocutory appeal of a court's order denying a motion to compel arbitration. While the substance of Illumina's motion had asked the court to compel arbitration, it was styled as a motion to dismiss Ariosa's counterclaims. The Federal Circuit found this formality divested it of jurisdiction to hear the appeal, ruling that "[i]n order to resolve uncertainty affecting our jurisdiction, we remand the case to the district court to afford [Illumina] the opportunity to move to compel arbitration. The district court may take such action as is appropriate." Docket No. 249, Exh. 3.

On July 30, 2015, this Court granted the parties' motions for a limited lift of stay for the purpose of ruling on a renewed motion to compel arbitration. Docket No. 257. Now before the Court, is Illumina's motion to compel arbitration. Docket No. 250.

The legal arguments advanced by Illumina in its current motion to compel are substantially identical to those raised in its motion to dismiss Ariosa's counterclaims in favor of arbitration. Illumina acknowledges that its arguments are "similar, albeit evolved" in light of "natural focusing and issue development that took place as part of the appeal process." Mot. at 3. However, Illumina primarily uses the "issue development" to argue the merits of Ariosa's counterclaims, rather than the scope of the arbitration clause that is at issue. *See e.g.* Mot. at 7, nt. 3.

In short, there has been no change in the law, nor any newly emerged material facts since the Court issued its prior order denying Illumina's motion to dismiss Ariosa's counterclaims. Indeed, Illumina's motion does not cite a single case published since the Court's prior order. Given that the material facts and legal framework are unchanged, the Court sees no reason to revise its prior conclusion.

## LEGAL STANDARD

Arbitration is a matter of contract, and there is a liberal federal policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). In determining whether the parties agreed to arbitrate the present dispute, the Court must determine "(1) whether a valid

3

United States District Court
Northern District of California

1    agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

2    issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

3         "The Supreme Court has emphasized that the 'first principle' of its arbitration decisions is

4    that '[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but

5    only those disputes—that the parties have agreed to submit to arbitration.'" *Goldman, Sachs &*

6    *Co. v. City of Reno*, 747 F.3d 733, 741-42 (9th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd.*

7    *of Teamsters*, 130 S. Ct. 2847, 2857 (2010)).  When determining whether parties have agreed to

8    submit a particular dispute to arbitration, the court should apply general state-law principles of

9    contract interpretation, while giving due regard to the federal policy in favor of arbitration by

10   resolving ambiguities as to the scope of arbitration in favor of arbitration.  *Id.* at 742; *see also*

11   *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) ("[W]here the contract

12   contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to

13   arbitrate the particular grievance should not be denied unless it may be said with positive

14   assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

15   dispute.  Doubts should be resolved in favor of coverage.'").

16        This policy, however, "is merely an acknowledgment of the FAA's commitment to
         'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and
17        to place such agreements upon the same footing as other contracts.'"  Accordingly,
         the Supreme Court "[has] never held that this policy overrides the principle that a
18        court may submit to arbitration 'only those disputes . . . that the parties have agreed
         to submit.'  Nor [has the Court] held that courts may use policy considerations as a
19        substitute for party agreement."

20   *Id.* (emphasis in original) (quoting *Granite Rock*, 130 S. Ct. at 2859).

21

22                                        **DISCUSSION**

23   **I.    Motion to Compel Arbitration**

24        Here, the parties do not dispute the existence of a valid agreement to arbitrate.  Rather, the

25   parties dispute whether the agreement encompasses Ariosa's counterclaims for breach of contract

26   and breach of the covenant of good faith and fair dealing. Illumina argues that Ariosa's

27   counterclaims for breach of contract and breach of the covenant of good faith and fair dealing

28   must be arbitrated because the counterclaims are subject to an arbitration provision, and Ariosa

                                              4

                                           JA0004

failed to pursue arbitration before filing suit.  In response, Ariosa argues that its counterclaims are not subject to the arbitration clause under the terms of the parties' agreement.

Section 31(c) of the relevant agreement contains the arbitration provision at issue and provides in pertinent part:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration in San Diego California[.] . . . This Section 31(c) shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.[2]

C. 14-cv-1921 Docket No. 31-2, Walter Decl. Ex. 1 at 17 § 31(c).  Ariosa argues that its breach counterclaims do not fall within the scope of this arbitration provision because its breach counterclaims relate to issues of infringement of a patent. The Court agrees.

In the second amended answer and counterclaims, Ariosa alleges that it entered into a sales and supply agreement with Illumina on January 4, 2012 ("the Agreement").  C. 14-cv-1921 Docket No. 68.  Ariosa alleges that based on Illumina's representations in the Agreement, Illumina granted Ariosa an express or implied license to the '794 patent. *Id.* ¶ 28.  Ariosa further alleges that the Agreement obligates Illumina to refrain from asserting the '794 patent against Ariosa in connection with the accused product, and that Illumina has breached the Agreement by bringing the present lawsuit for infringement of the '794 patent. *Id.* ¶¶ 66-68.  Therefore, Ariosa's breach counterclaims are centered on its contention that it has been granted an express or implied license to the patent-in-suit.  Indeed, Illumina agrees with this characterization of the counterclaims.  In its reply brief to its prior motion to dismiss, Illumina stated: "In a nutshell, Ariosa's breach counterclaims boil down to the contention that Section 4(a) of the supply agreement grants Ariosa a license (either express or implied) to every single patent Illumina owns.  Ariosa thus contends that Illumina breached the supply agreement by merely by suing Ariosa for patent infringement."

---

[2] "Intellectual Property Rights" is defined in the Agreement as "all rights in patent, copyrights, trade secrets, know-how, trademark, service mark and trade dress rights and other intellectual property rights, current or future, under the laws of any jurisdiction, together with all application therefor and registrations thereto."  C. 14-cv-1921 Docket No. 31-2, Walter Decl. Ex. 1 at 4 § 1.

5

1  C. 14-cv-1921 Docket No. 38-4. Its present motion to compel arbitration echoes that same

2  understanding. Mot. at 10.

3      Because Ariosa's breach counterclaims are centered on its contention that it has been

4  granted an express or implied license to the '794 patent, the counterclaims clearly relate to[3] issues

5  of patent infringement. Under 35 U.S.C. § 271, a defendant can only be liable for infringement if

6  the allegedly infringing acts are carried out "without authority." 35 U.S.C. §§ 271(a), (f), (g).

7  Therefore, whether an accused infringer has been granted an express or implied license is an issue

8  that is directly relates to whether a patent has been infringed. *See Anton/Bauer, Inc. v. PAG, Ltd.*,

9  329 F.3d 1343, 1350 (Fed. Cir. 2003) ("[A]ll or part of a patentee's right to exclude others from

10  making, using, or selling a patented invention may be waived by granting a license, which may be

11  express or implied."); *McCoy v. Mitsuboshi Cutlery*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("[A]

12  patent or trademark owner may contract to confer a license on another party. . . A licensee, of

13  course, has an affirmative defense to a claim of patent infringement.").

14      Illumina argues that Ariosa's counterclaims can be resolved solely by looking at the terms

15  of the supply agreement. However, that the dispute can be resolved through an examination of an

16  agreement rather than an examination of the accused product does not change the fact that the

17  dispute is related to the determination of whether the patent has been infringed. Because Ariosa's

18  breach counterclaims unambiguously relate to issues of patent infringement, the counterclaims are,

19  by the specific provisions of the arbitration clause itself, outside of the scope of the arbitration

20  agreement ("This Section 31(c) shall not apply to, and no arbitration shall resolve, disputes

21  relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property

22  Rights."); hence, the presumption of arbitrability has been rebutted. Therefore, the Court declines

23  to compel arbitration of Ariosa's counterclaims for breach of contract and breach of the covenant

24  of good faith and fair dealing. Accordingly, Illumina's motion is **DENIED**.

25

26

27      [3] The Supreme Court has noted that the phrase "relate to" has a "'broad common-sense meaning,'" such that "relate to," in the normal sense of the phrase, means to have "'a connection

28  with or reference to.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *accord Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983) (citing Black's Law Dictionary 1158 (5th ed. 1979)).

6

**II.     Motions to Seal**

With the exception of a narrow range of documents that are "traditionally kept secret," courts begin their sealing analysis with "a strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "A stipulation, or a blanket protective order that allows a party to designate documents as sealable, will not suffice to allow the filing of documents under seal." Civ. L.R. 79-5(a). When applying to file documents under seal in connection with a dispositive motion, the party seeking to seal must articulate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotations and citations omitted). Where a party seeks to seal documents attached to a non-dispositive motion, a showing of "good cause" under Federal Rule of Civil Procedure 26(c) is sufficient. *Id*. at 1179-80; *see also* Fed. R. Civ. P. 26(c). In addition, all requests to file under seal must be "narrowly tailored," such that only sealable information is sought to be redacted from public access. Civ. L.R. 79-5(b). Because a motion to compel arbitration is not dispositive, the "good cause standard applies."

The parties seek to seal portions of Illumina's motion to compel arbitration, Ariosa's opposition, and attached exhibits. The Court **DENIES** the parties' motion as it relates to Exhibit 2 to Ariosa's opposition, and Exhibits 6, 9, 10, 11, and 12 to Illumina's motion. Docket Nos. 251, 261. The parties argue that this information is designated as highly confidential pursuant to the terms of the protective order in this case. But good cause "cannot be established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be confidential." *Bain v. AstraZeneca LP*, 2011 U.S. Dist. LEXIS 15965, at *2 (N.D. Cal. Feb. 7, 2011); *see* Civ. L.R. 79-5(d)(1)(A).

Additionally, these documents have been sealed in their entirety, and therefore fail to meet

7

the "narrow tailoring" requirement. This deficiency is especially troubling given that the parties have filed dozens of motions to seal in this action and related actions, and have been reminded of their failure to comply with the narrow tailoring requirement on many occasions. *See* Docket No. 109 ("[I]t does not appear that Ariosa's request to seal the exhibit is narrowly tailored. Even assuming that the exhibit contains some sealable confidential information, that would only be good cause to seal certain portions of the exhibit, not the entire document."); *see also* Docket No. 162. These exhibits were not considered for purposes of ruling on this motion and are therefore not part of the record. *See* Civil Local Rule 79-5(f).

The parties' motions to seal are **GRANTED** as to the remaining documents, as the Court has previously found this information to be sealable.

**IT IS SO ORDERED**.

Dated: August 31, 2015

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

8